```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------x

UNITED STATES OF AMERICA,
                                            MEMORANDUM AND ORDER
     - against -                              13 Cr. 514 (NRB)

ROBERT ROSARIO,
               Defendant.

----------------------------------------x
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Robert Rosario brings this <u>pro se</u> petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Rosario challenges a sentence imposed by this Court on July 15, 2014, after Rosario pled guilty to a two-count Superseding Information pursuant to a plea agreement. For the reasons stated herein, this petition is denied.

## BACKGROUND

On November 21, 2013, Rosario pled guilty, pursuant to a plea agreement, to a two-count Superseding Information charging him with conspiracy to commit robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 ("Hobbs Act Robbery"), and with illegal reentry to the United States, in violation of 8 U.S.C. § 1326. During the plea hearing, Rosario was allocated on his understanding of the charges against him, the range of penalties

he faced, the rights he would relinquish by pleading guilty, and the terms of his plea agreement.  Plea Tr. at 4-11.

On July 15, 2014, Rosario was sentenced.  At the sentencing proceeding, Rosario's counsel argued extensively for a below-Guidelines sentence on the ground that the Southern District of New York "does not have a fast-track program," under which certain defendants who plead expeditiously receive a four-level reduction in their Guidelines offense levels.  Sentencing Tr. at 7-8.  As a result, Rosario's counsel argued, Rosario's sentence should be reduced to avoid "a disparity here between him and close to 80 percent of the individuals prosecuted in the United States for unlawful entry in the federal courts" who do receive the benefit of a fast-track disposition.  Id. at 7-9.  He also included material in support of this argument in his sentencing memorandum.  See id. at 8-9; dkt. no. 62.  The Court proceeded to sentence Rosario to a below-Guidelines sentence of forty-two months' imprisonment.

On March 1, 2015, the Court received Rosario's current petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  In his petition, Rosario argues that his counsel was constitutionally ineffective in "failing to argue during his sentencing proceedings for a 'non-guidelines' sentence based upon potential disparities between districts that employed the Fast-Track program and those . . . that at the time did not."  Pet. at

4.  He also acknowledges that his plea agreement contains a waiver of his right to file the present motion, but asserts that this waiver was not knowing and voluntary.  Id.

The Court received the Government's opposition brief on March 27, 2015, and Rosario's reply brief on May 4, 2015.  In his reply brief, Rosario argues that his attorney was also constitutionally ineffective for failing to file a notice of appeal on Rosario's behalf despite having been told to do so, and he includes a sworn affidavit to that effect.  Reply at 8; Rosario Aff.  In response to Rosario's new claim of ineffective assistance, the Court ordered Alan Nelson, Rosario's trial counsel, to submit an affidavit "addressing whether he was asked by Rosario to file a notice of appeal and, if so, whether he nevertheless failed to do so."  Dkt. No. 138.  On June 1, 2015, Mr. Nelson filed an affidavit recounting discussions with Rosario regarding Rosario's plea agreement, waiver of appeal, and sentencing, and stating that Rosario had never asked or instructed him to file a notice of appeal.  Dkt. No. 140.

## DISCUSSION

### I. Rosario Waived His Right to Collaterally Attack His Sentence

A defendant may validly waive his right to collaterally attack his sentence through the entry of a knowing and voluntary plea pursuant to an agreement containing such a waiver.  See, e.g.,

3

United States v. Riggi, 649 F.3d 143, 147 (2d Cir. 2011) ("'Waivers of the right to appeal a sentence are presumptively enforceable.' We have 'repeatedly upheld the validity of [appeal] waivers' if they are 'knowingly, voluntarily, and competently provided by the defendant.'" (quoting United States v. Arevalo (Vigil), 628 F.3d 93, 98 (2d Cir. 2010); United States v. Gomez-Perez, 215 F.3d 315, 318 (2d Cir.2000))); see also United States v. Djelevic, 161 F.3d 104, 106 (2d Cir. 1998).  Such waivers are enforceable even where the grounds for appeal or collateral attack arise after the plea agreement was entered into.  See Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001).  However, a waiver will not be held to bar collateral attack where the plea was not knowing and voluntary, or where the defendant has raised a claim of ineffective assistance of counsel directed at his agreeing to the plea agreement itself.  See Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008).

Here, Rosario's plea agreement contained the following waiver:

> It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 51 to 63 months' imprisonment. . . . This provision is binding on the parties even if the Court employs a Guidelines analysis that is different from that stipulated to herein.  Furthermore, it is agreed that any appeal as to

the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation.

Rosario now seeks to challenge his sentence in contravention of this waiver on the grounds that "his waiver of the right to appeal was not knowing and voluntary" and that "he received ineffective assistance of counsel in entering into the Plea Agreement." Pet. at 4.

However, at his plea allocution, Rosario stated under oath that he had discussed his case and his plea with counsel and that he was satisfied with the advice his counsel had provided. See Plea Tr. at 4. ("Have you had sufficient time to discuss the charges against you and your plea with Mr. Nelson?" "Yes. We met several times to talk about that." "Have you been satisfied with the advice and the counsel that Mr. Nelson has given to you?" "Yes. He's a very good professional."). He told the court that he understood the charges and the range of penalties that he faced, id. at 4-5, 8, 9, that he had had the plea agreement translated for him and had discussed the agreement with counsel, id. at 9, and that he understood that by pleading guilty he would be giving up certain rights, specifically including the right to challenge a sentence within the stipulated guidelines range. See id. at 11 ("Do you understand that if you receive a sentence within the stipulated guidelines range that you have agreed not to appeal or

5

otherwise challenge such a sentence?" "Yes, that's what the agreement says."). He affirmed that he was in fact guilty, id. at 11, and that his plea was made voluntarily, id. at 9 ("Is your plea voluntary, in other words, of your own free will?" "Yes.").

Rosario has presented no evidence beyond the assertion that "his waiver of the right to appeal was not knowing and voluntary [and] that he received ineffective assistance of counsel in entering into the Plea Agreement," Pet. at 4, to contradict his statements at the plea allocution. Because "[t]he district court is entitled to accept a defendant's statements under oath at a plea allocution as true," United States v. Maker, 108 F.3d 1513, 1521 (2d. Cir. 1997), we conclude that Rosario had effective assistance of counsel in entering into the plea agreement and that his plea was made voluntarily and knowingly. Thus, because the record demonstrates that Rosario's waiver of his right to collaterally attack a sentence within a stipulated Guidelines range was knowing and voluntary, and because he ultimately received a below-Guidelines sentence, that waiver applies to bar his claims. See United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004).

## II. Rosario Did Not Receive Ineffective Assistance of Counsel

Even if the Court were to reach the merits of Rosario's claim, his petition would nevertheless be denied because he has not demonstrated that his counsel provided ineffective assistance.

6

To prevail on an ineffective assistance claim, "a habeas petitioner must demonstrate that: (1) his counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." McCoy v. United States, 707 F.3d 184, 187 (2d Cir. 2013) (citing United States v. Strickland, 466 U.S. 668, 687-88 (1984)).  The petitioner "bears a 'heavy' burden to establish that trial counsel's performance was unreasonable under 'prevailing professional norms.'"  Id. (quoting Harrington v. United States, 689 F.3d 124, 129-30 (2d Cir. 2012)).

## A. Failure to Seek a Reduced Sentence

Rosario first claims that his counsel was ineffective because he "failed to pursue . . . a Fast-Track Program sentence reduction at the time of his sentencing," specifically "failing to argue during his sentencing proceedings for a 'non-guidelines' sentence based upon potential disparities between districts that employed the Fast-Track program and those . . . that at the time did not."[1] Pet. at 4.

---

[1] Rosario also suggests that his counsel was ineffective for simply "not . . . having him placed in the "Fast Track Program."  Reply at 5; see also id. at 6 ("Petitioner's lawyer was ineffective for failing to secure Petitioner's participation in a program that he was ineligible to participate in.").  As Rosario himself later acknowledges, however, such an action could not be taken unilaterally by his counsel, as "the decision regarding 'Fast Track' . . . is in the sole discretion of the Government . . . ."  Reply at 6.

7

However, any alleged failure to pursue a reduction based on a disparity between sentences in fast-track and non-fast-track districts could not have been constitutionally defective.  First and foremost, Rosario cannot have been harmed by his counsel's failure to seek a fast-track-program sentence reduction because--as Rosario himself acknowledges[2]--his counsel did, in fact, argue for such a reduction at sentencing.  <u>See</u> Sentencing Tr. at 7-9 ("Judge, the second area of disparity, and I do believe that it is a significant one, is that there is a disparity here between him and close to 80 percent of the individuals prosecuted in the United States for unlawful entry in the federal courts.  And that's because the Southern District of New York, unlike the Southern District of California and the border states, does not have a fast-track program . . . .  And that results in a difference of four levels from that of him and close to 80 percent of the other people who are prosecuted in this country. . . .  I included the fast-track program's requirements from the Department of Justice in my sentencing memorandum.  And it does indeed include individuals that my client would fit into the category of."); <u>id.</u> at 12 ("I'm asking Court to vary downward four levels based upon the fast-track program that exists in other jurisdictions.").  Because he

---

[2] Rosario expressly concedes that his attorney made a request for a fast-track reduction.  <u>See</u> Reply at 2 ("It is true that Mr. Nelson had a conversation about the "Fast Track" program with Petitioner, and . . . included such request in the sentencing submission on his behalf.").

8

did pursue a fast-track reduction--acting precisely as Rosario claims he should have acted--Rosario's counsel cannot be found to have unreasonably failed to make such an argument, and Rosario cannot show that the result of his sentencing proceeding would have been any different.

In any event, this argument for a reduction based on fast-track disparities was entirely meritless because, at the time of Rosario's sentencing, the Southern District of New York ("SDNY") had in fact adopted a fast-track program. See United States Attorney's Office, Southern District of New York, Fast-Track Policy for Felony Illegal Reentry Offenses (March 5, 2012), http://www.fd.org/docs/select-topics---sentencing/Fast-Track-Policies.pdf. However, Rosario was not eligible for inclusion in this program, as it accepted only defendants who had been charged solely with illegal reentry. See id. ("In order to participate in the SDNY fast-track program, a defendant must be charged solely with illegal reentry under 8 U.S.C. § 1326. Defendants charged in multiple counts, of which only one is illegal reentry, are not eligible for fast-track disposition.") Because Rosario had been charged with both illegal reentry and Hobbs Act Robbery, he was necessarily excluded from obtaining a fast-track disposition.[3] As

---

[3] Rosario suggests in his reply brief that he was in fact eligible for SDNY's fast-track program because it "does not appl[y] to any illegal-reentry defendant who 'has two (2) or more prior deportations, exclusions, and/or removals,'" and he "had never been removed from the United States, rendering him eligible to participate in the SDNY Fast-Track Program." Reply at 3-4.

a result, even had counsel failed to make the erroneous argument that Rosario should have received a reduced sentence because he would have received one had SDNY offered a fast-track program, the failure to so argue would not have been unreasonable and could not have resulted in prejudice to Rosario. See, e.g., Martinez-Diaz v. United States, No. 2:12-CV-00243, 2014 WL 97360, at *4 (S.D. Ohio Jan. 8, 2014) ("This Court concludes that, because of the nature of the offenses with which Petitioner was charged and of the offense to which he pled guilty, Petitioner could not have qualified for participation in the 'fast-track' program even if such a program had been implemented in this District at the time of Petitioner's sentencing. It follows, then, that his attorney was not ineffective for failing to seek a reduction in sentence based on that program.").

In addition, the Second Circuit has made clear that "sentencing disparities created by the fact that some, but not all, districts use fast-track programs do[] not render the sentences in non-fast-track districts unreasonable," and that a court need not depart from the Guidelines in order to account for such a disparity. See United States v. Ponce-Cruz, 293 F. App'x 96, 99 (2d Cir. 2008); United States v. Mejia, 461 F.3d 158, 164

---

However, Rosario seems to fundamentally misunderstand the requirements for the fast-track program, as elsewhere he argues that his "convictions for aggravated felony and illegal reentry render him eligible for it," Reply at 6 (emphasis added), a contention that runs directly counter to the text of the program's requirements.

(2d Cir. 2006). "Since courts do not have to account for the difference between fast-track and non fast-track jurisdictions, [Rosario] cannot say with any reasonable probability that had his counsel made an argument alleging that the difference should be factored into sentencing, . . . the outcome of his sentencing would have been different." Espinal-Martinez v. United States, 499 F.Supp.2d 213, 216-17 (N.D.N.Y.2007); see also Cuevas v. United States, 06 Cr. 250 (NRB), 2008 WL 2117597, at *5 (S.D.N.Y. May 15, 2008); Urena v. United States, 04 Cr. 1336 (JFK), 2007 WL 2319136, at *4 (S.D.N.Y. Aug. 8, 2007). Consequently, any failure to make such an argument could not have prejudiced Rosario and therefore could not have constituted ineffective assistance.

**B. Failure to File a Notice of Appeal**

Second, Rosario argues that he received ineffective assistance of counsel because Rosario asked his "defense counsel Mr. Nelson to file a notice of appeal[]" and "Mr. Nelson promised me that he would appeal my sentence, but he didn't do it." Rosario Aff. at 2; see also Reply at 7-8 ("[Petitioner] asked his counsel to file this appeal, and because his counsel failed to do so he is entitled to an evidentiary hearing and the right to file an out-of-time appeal.").

"It is settled that 'ineffective assistance may be found when a defendant has pled guilty and waived the right to appeal, then later directs counsel to appeal, but counsel does not appeal.'"

11

Kapelioujnyi v. United States, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009), aff'd, 422 F. App'x 25 (2d Cir. 2011).  When a defendant claims that he instructed his attorney to file a notice of appeal and that his attorney nevertheless failed to do so, the district court must determine whether the defendant in fact requested that his attorney file an appeal.  See, e.g., United States v. Hernandez-Uberia, 07 Cr. 378 (SHS), 2010 WL 1948586, at *2 (S.D.N.Y. May 11, 2010); United States v. Moreno-Rivera, 472 F.3d 49, 52 (2d Cir. 2006) ("What matters for purposes of that claim is whether [defendant's] trial counsel 'fail[ed] to file a requested appeal'").  To make such a determination, "the district court may '[supplement] the record [with] a detailed affidavit from trial counsel credibly describing the circumstances concerning [the petitioner's] claim.'" United States v. Williams, 04 Cr. 178 (DC), 2009 WL 1162382, at *2 (S.D.N.Y. May 1, 2009) (quoting Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (alterations in original); see also, e.g., Hernandez-Uberia, 2010 WL 1948586, at *2 (denying petition where counsel "submitted an affidavit to this Court on this motion stating specifically that [the defendant] 'never informed me he wanted me to file a Notice of Appeal' and that '[i]f defendant had done so I would have filed that Notice of Appeal for him'"); Kapelioujnyi, 779 F. Supp. 2d at 253 (denying petition where counsel submitted affidavit "averring 'I have no recollection that petitioner directed me to file an appeal of his

12

case . . . It has long been my practice and policy to file an appeal in the event a client asks me to do so, even if it is against my advice'"").

Here, Rosario's trial counsel has submitted a detailed affidavit affirming that Rosario never asked him to file a notice of appeal and that, had he been asked, he would have filed an appeal pursuant to his general practice as a defense attorney. The affidavit states in relevant part:

> 8.   Upon the completion of the sentencing hearing I spoke with Robert Rosario in the holding cells adjacent to the Courtroom. At that time I advised [him] that the sentence was below the advisory range and reminded him of his waiver of appeal contained in the plea agreement, as I do by practice in each case where a defendant received a sentence pursuant to a written plea agreement which contains such a waiver and where the sentence imposed is within or below the stipulated guideline range applicable to the waiver of appeal.
>
> 9.   Neither at that time nor at any time since that date has Robert Rosario asked that I file a Notice of Appeal on his behalf.
>
> 10.  At no time did I promise Robert Rosario that I would file a Notice of appeal on his behalf. Indeed, had the defendant made such a request, I would have discussed with him the consequences of his waiver of appeal, advised him in writing that upon the docketing of the matter in the Second Circuit Court of Appeals that I would move to be relieved as a consequence of the waiver, and contemporaneously would prepare and file a brief pursuant to Anders v. California, 386 U.S. 738 (1967).

Dkt. No. 140.

Rosario, by contrast, has submitted only a three-sentence affidavit stating that "as soon as my sentencing judge sentenced

13

me, I asked my defense counsel Mr. Nelson to file a notice of appeal[] on my behalf," and that "Mr. Nelson promised me that he would appeal my sentence, but he didn't do it."  Such bare assertions, offered without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel.  See, e.g., Garcia v. United States, 01 Cr. 945, 2008 WL 683661, at *5 (S.D.N.Y. Mar. 14, 2008) report and recommendation adopted, 04 Civ. 6020(RMB)(GWG), 2008 WL 2446840 (S.D.N.Y. June 17, 2008) ("Garcia has said only in the most conclusory terms that he instructed his counsel to file a notice of appeal.  He does not . . . detail the content or nature of such conversations . . . .  He does not explain on what grounds he would have expected his attorney to have appealed.  He does not provide any contemporaneous documents making the request or documents after the deadline for filing an appeal that reflect his complaints about [counsel's] failure to file the notice.  Moreover, unlike the situation of a trial, here there is a plea agreement that specifically waives the right to appeal, providing further evidence that Garcia would not have had any reason to ask [his counsel] to file an appeal.").  What's more, the assertions in Rosario's affidavit--that Mr. Nelson promised he would appeal, but did not--are contradicted by a statement in Rosario's reply brief, in which he "affirms that

14

Mr. Nelson told [me] that he <u>won't</u> file an appeal . . . ." Reply at 1 (emphasis added).

Under these circumstances, we "accept[] counsel's affidavit over petitioner's bare assertions," <u>Hernandez-Uberia</u>, 2010 WL 1948586, at *2, and conclude that Rosario did not instruct his attorney to file a notice of appeal. Rosario's counsel consequently cannot be ineffective for failing to appeal to Rosario's sentence.

Because Rosario has not identified any other alleged ineffectiveness of the part of his counsel, his petition is therefore denied.

## CONCLUSION

For the reasons stated herein, Rosario's petition is denied. This Memorandum and Order resolves Docket No. 134.

**SO ORDERED.**

DATED:   New York, New York
         August 4, 2015

                                    _____
                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

15

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

**Attorney for the Government**
Andrew Adams, Esq.
Assistant United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, NY 10007

**Defendant**
Robert Rosario
Reg. No. 68479-054
M.V.C.C. - Unit C5
555-1 GEO Drive
Philipsburg, PA 16856